We have four cases to be submitted today on oral argument. We'll hear the first two cases and then take a brief recess before completing the docket. And we begin with United States v. Santiago. Ms. Kuhn. Good morning, Your Honors. My name is Samantha Kuhn and I represent Mr. Santiago in this appeal. As we've explained in our briefing, two of Mr. Santiago's convictions need to be reversed or vacated based on plain Rule XI errors. I intend to spend most of my time today talking about the sentencing errors that took place in this case because there's so many and they're so interrelated in that proceeding. But I'd like to take a few minutes initially to discuss the Rule XI errors and of course answer any questions that the Court might have. I think what gets lost in the briefing and particularly in the government's briefing on the Rule XI errors is that Rule XI is intended to be a highly individualized process just like sentencing. It's intended to make sure that the specific defendant pleading guilty understands the charges against him and that the specific facts admitted by that defendant are sufficient to make him guilty of the crimes. And so in this proceeding, it required him to personally admit to having committed acts that constituted all the requisite elements of the offense. That's in McCarthy. And this Court made clear in Trejo that the Court can't speculate or assume elements of the offense that are not specifically admitted to. And that includes elements like intent. And so in this case, the factual basis has admissions showing that Mr. Santiago was in a hotel room with others, that he agreed to sell marijuana. Because your time is precious. You're focusing on Counts 2 and 4, correct? Yes. Yes, Your Honor. The 924C and the 856 for maintaining evidence. And it's plain error review. Correct. So you're stuck with what Attorney Atkinson agreed to in the factual basis. Okay. And Count 4 would be cumulative. So the real, the big one is Count 2 or do I have it reversed? In other words, Count 4, the sentence was concurrent, wasn't it? Yes. Yes, Your Honor. So looking at Count 2, I have two questions there. If Attorney Atkinson negotiated a factual basis that said there were seven occupants, seven occupants shot, and one of the seven was Santiago, why isn't that enough? That's not enough, Your Honor. Because first of all, I think that all of the other statements and the factual basis taken in its entirety, it shows that occupants are referred to generically. I understand there is one line that refers to the number. And then another line says he's one of the seven. Correct. I will say, though, I think the more glaring error for the 924C issue is the intent aspect of it. Because even if there is sufficient evidence in the factual basis to support the finding that he shot a firearm during that incident, there's no specific factual emissions and there's nothing to show that he specifically fired a gun in relation to the drug conspiracy as opposed purely for self defense. I guess that was my only other question about that. Because the discharge wouldn't be a Rule 11 problem, right? The 924C is met by use. The discharge is a sentencing enhancement. So if there were deficiency of proof, that would just go to the Rule 32 question, correct? I think if there's a deficiency regarding the discharge aspect of it and the discharge being connected to the drug conspiracy, that would be to the sentencing issue. But I would say that I think that even the possession, the only information that would even support him even picking up a firearm would be during that incident. And there's no evidence to suggest that he picked up a firearm in relation to the drug conspiracy as opposed to defending himself from assailants. And so that's kind of the main point that I just want to make about the Rule 11 issue. I think that it needs to be focused on the individual nature of it. And just like the I think what the judge lost here was that this was supposed to be an individualized inquiry. And instead, the factual basis and the entire proceeding was focused on this generalized conduct and circumstance among a dozen individuals and kind of generically lumping them all together. And so if there's no further questions about Rule 11, I'd like to shift to sentencing. Now with respect to sentencing, and the reason I want to spend most of my time there is because this proceeding had a number of issues, many of them interrelated. But overall, it was a seriously flawed proceeding that resulted in a substantially unreasonable 30-year sentence. And I think there is some confusion in the briefing, in the government's brief about what specific procedural errors we've raised. And so to just kind of summarize that, there's three overarching procedural problems with this sentencing, all of which are identified as procedural error in Gall. The first being the failure to calculate the guidelines range at all. The judge made clear at the beginning of the sentencing and repeatedly said that the court didn't find it necessary to make determinations about the guidelines range. So that's one procedural error that we've raised. The second one is a miscalculation of the guidelines range, and that's an alternative argument to the first one. Because he technically pronounced, after explaining that he didn't make any findings, he pronounced a sentencing range that was listed in the indented to the court, just stating that range was a finding of a guideline range. Then there's a number of problems with that range, both legal and factual errors in that calculation. And then finally, the third procedural error is the failure to conduct an individualized assessment of the 3553A factors, which also overlaps somewhat with the substantive unreasonable argument. Because a lot was going on, right? The defendant didn't read the addendum until the sentencing hearing. And the defendant's trying to withdraw from his guilty plea once he's read it. And Judge Guidry denies the withdrawal motion. And then he uses language like, I'm going to moot the rest, the way I craft this. Correct. Is that all correct? And so as I see that both of you have briefed it, you both brief it that what he did was he cross-referenced uncharged conduct. Yes, Your Honor. And that's what it says in the Statement of Reasons. In the Statement of Reasons, it has the language about the shocking and disturbing nature of the crime. No, that's what he said verbally. But in the written Statement of Reasons, it does indicate he's cross-referencing. Here, let me turn this into a question to you. You're saying he didn't do the calculations, and I would agree with that. You're saying in the alternative, if he did, he messed up, or he hasn't? Correct. Okay. Why couldn't the sentencing hearing be read differently than I think both of you are presenting it? That Judge Guidry decided calculations are too complex, there's an objection I don't want to deal with, I'm just going to pronounce a 3553 sentence. And it shocks me that somebody would shoot a gun in a hotel that could kill innocents. In other words, that may be a big dodge, and you may have law that says that you can't do that. But what if a judge just says, forget the guidelines, under 3553, this shocks me, it's awful what this young man did? The issue with that, Your Honor, is that he can't say forget the guidelines. The Supreme Court and this Court have been very clear. The guidelines have to be a starting point, and even if the Court thinks, regardless of the guidelines, I'm going to give an upward variance in this case, I'm going to have to, it's not going to be enough, the Court still has to calculate the guidelines and still has to use that as the framework, and then has to decide the extent of the variance using that as the starting point. And he didn't calculate orally. What about when he writes his written statement of reasons? It looks like then he's trying to calculate. Right, and I see, Your Honor, that in the statement of reasons it does refer to the cross-reference. I would say that that issued after the sentencing, where he's clearly stated, I'm not making any findings about this disputed factual issue. I think that oral pronouncement and that oral explanation clearly shows what his mindset is. So what's the relief, if you're right, about the procedural sentencing area? What's the relief if we don't agree with you on the Rule 11 prompt? The relief for that is vacated and remanded for resentencing. I don't think the Court would then reach any of the guideline calculation challenges because the finding would be the District Court didn't do that in the first instance. If you don't mind, I'll just ask one other question then. Let's say you go back to sentencing and Judge Guidry decides to do the hard work about sentencing someone for something they didn't plead to. In this case, U.S. v. Hebert, Judge Malazzo had a four-day sentencing to take evidence. Yes, Your Honor. So is your position that if a judge is going to actually give someone a 30-year sentence on something they didn't plead to, they've got to take evidence? Or could the factual basis itself establish to a preponderance that this other charged crime—would you say that a judge could just—you understand my question? I'm not saying it very articulately. I think I understand your question. I think you're just saying, would he have to take additional information to find a cross-reference for attempted murder, is the question? Or any time a district judge decides to sentence someone on something they didn't plead to. Can they use the factual basis for the marijuana trafficking to establish attempted murder? Or do they have to take new evidence, mini-trial, to a lesser proof? I think they certainly can take factual admissions from the defendant into consideration. They still have to meet that preponderance of reliable evidence standard. And so here the factual basis for this particular cross-reference would not be sufficient. Wouldn't establish attempted murder. Why not? Because there's no—going back to the Rule 11 issue with intent, but even more so with regard to attempted murder, as we discussed in the briefing, attempted murder requires specific intent to kill, not just injure. And it also has self-defense as a full defense. There's no exclusion for if you're engaged in some kind of crime at the time under the authority for that, because I looked at our Branch case, and Branch says you don't get a self-defense unless you're, quote, free from fault. So I'm thinking if a person's trafficking marijuana and has guns, they're not free from fault. I think that's too tangentially related to the incident. I think free from fault, and in the jury instruction when it cites Branch, it discusses not—I forget the wording, but the way I read that case law is that it's free from fault in the violent interaction. And so if you initiate a fight with someone and then it escalates, that arguably, I would think, could make you not free from fault to assert self-defense. But in this circumstance, there's no violent interaction. While, you know, the government has argued that having guns and having drugs arguably, in their view, invited this, I don't think that's true. It doesn't invite somebody to come assault you and rob you. You have a self-defense case, just that you've—I know this is far away, and if we re-sentence, this will all be fleshed, but can you think of a self-defense case where it's a drug dealer with guns who then shoots? That's not—that somehow he would be able to assert self-defense? I don't specifically— Just a little. It's a little hard to wrap the head around it, but you're right. I don't specifically— Judge Guidry didn't get into any of this. Right. Judge Guidry didn't reach any of these issues. And so, I guess, shifting a little bit away from that aspect of it, I do want to just briefly address preservation, because I know that was debated somewhat in the briefing. To be clear, everything that we've raised regarding sentencing has been preserved, except for the two specific guideline challenges regarding the 924C commentary and the grouping rules. Everything else in the record makes it very clear that the defense objected generally to any attempted murder cross-reference. They objected to every paragraph referencing attempted murder, not just first-degree enhancements. And then they also requested a hearing where the government would be required to carry its burden to prove the conclusions in the PSR. So all of this telegraphed and told Judge Guidry very clearly that the defense wanted him to calculate the guidelines properly, wanted him to take that into consideration. And then, at sentencing, the Court specifically raised individualized circumstances regarding Mr. Santiago, his relative culpability and his lack of criminal history, and asked Judge Guidry to take those into account. And so, with respect to the individualized sentencing issue, that was clearly notified to Judge Guidry that that was the expectation, that he would be treated as an individual and have the 3553A factors considered fully. 3553 doesn't require much of an explanation. He gives a paragraph and he says, I'm shocked and I'm disturbed by anyone who would shoot up a hotel. Would that, under our existing 3553 law, that wouldn't be enough? Or are you saying that isn't specific to him, there's no individualized, that's just speaking about the whole group again? It's the individualized aspect. And also, I think, just to clarify something, again, this is where there's a little confusion in the briefing. The government seemed to take our argument as a challenge to the adequacy of the explanation of the guidelines calculation or the sentence itself. We have not raised an inadequate explanation argument. And the reason for that is because the Court didn't make it past the point of doing an individualized assessment. That's a separate procedural error. We haven't raised that. What our argument is, is that he didn't actually do an individualized assessment of the factors. What if he just said, forget the cross-reference, which he got close to saying? I'm going to moot that. And he sort of said, assume you've won it. Therefore, I adopt the PSR, I adopt its range, that's my calculation, but I'm going to go up to 30 years, five years more than even the government asked, because I'm shocked. Would that be error? That would still be error. Let's assume that the guideline calculation is ostensibly not disputed, and that was the one that they wanted. For him to just say, this is shocking, I'm going up, this Court has made clear you have to have sufficient considerations to justify the extent of the variance. It's not just, I want to go up, and so I'm going to max you out. The Court has to have individualized reasons. And so in every single case, if you look at every single case cited in the briefing, all of these affirmances of substantive, unreasonable challenges to upward variances, in every single one of those cases, the Court has cited the individualized circumstances cited by the sentencing judge, whether it's the person's criminal history, their relative culpability in the offense, underrepresented criminal history if things weren't counted. It's always an individualized assessment. And here, that was, so the Court couldn't just say, this is a shocking event, because that does not look at what Mr. Santiago did, what his intent was, and who he is as a person. That's the requirement. And that's what the Supreme Court has repeatedly made clear is necessary for a fair sentencing proceeding. And just to cite a couple of the key cases, I think, that are relevant to this issue. You're not saying Judge Guidry erred when he denied the motion to withdraw, right? As I understand it. Correct. The motion to withdraw was premised on not expecting the guidelines calculation to come out as what it was. I thought the motion to withdraw was, jeez, the whole reason I pled to marijuana trafficking was I didn't want to get hit for murder. And then he sees the PSR addendum say, you're going to get hit for murder, and he says, I want to get out. Why isn't that good cause to withdraw a guilty plea and say, I'll go to trial if you're going to put me in jail for 30 years on murder? My understanding of the Court's case law, particularly in light of the fact that he was notified at the Rule 11 proceeding that the guidelines were advisory and that they Even if it's shifting to what you didn't plead to? I'm sorry? Even if the guidelines aren't just looking high, they're looking high because it's something you didn't plead to. That's still not good cause? That was my understanding of this, and that's why we didn't raise that here. I think the Rule 11 instructions and the factual basis error are the issues. How much did probation and the government request? What was their recommendation? We do not have probation's recommendation in the ROA. That did not come through. I don't know that we get that normally. The government requested top of the guidelines, and so if you're talking about 135 to 168, that would be 288 as opposed to 360 that he got. About five years less. Right. And in the PSR, and I think this is a notable point, the PSR provided both a downward variance and an upward variance paragraph.  In the PSR, when they responded to the attempted murderous cross reference issue, that the probation office appeared to confuse Mr. Santiago with one of the robbers. It stated that all of the occupants were victims of attempted murder. And I'll answer the rest of the court's questions on rebuttal. Yes, you saved time for rebuttal. Thank you, Ms. Coates. Good morning, Your Honors, and may it please the court, Diane Coates and Maurice Landrieu and Chrissy Caligaro for the government. Mr. Landrieu was the trial counsel in this case. There are so many questions that Judge Higginson asked, and I'm going to start by talking in general about sentencing. A court definitely can decide to issue a non-guidelines variance. The court does have to say what the guidelines are, but that happened here. There was no failure to calculate the guidelines. He said at 231, and again in the Statement of Reasons at 316, that he calculated them as 135 to 168 months. And that was a number that neither the government nor probation sought. And, in fact, even in the addendum, the probation is arguing for the attempted first-degree murder, and in the government's response to the objections, that's the same case. And I think that one thing . . . When you say you think that he did do guidelines calculations, where in the oral statement does he ever calculate the guidelines? He says what they are, and under Rule 32I.3b, for any disputed portion of the PSR, the district court can find a ruling is unnecessary because the matter will not affect sentencing and doesn't have to go into a catechismic regurgitation of each fact determined. And so when you look at that, and you look at what happened here, and I'd like to give you a couple of sites . . . Well, maybe what would help me would be a quote. Where does Judge Guidry ever say, here's my calculation of the guidelines? I thought he sort of said the opposite. I'm going to moot that. I'm going to moot those difficult things because I'm going to craft a different sentence. Am I wrong? That is the context. And I would like to give you some sites to explain that particular portion of the sentence. Maybe instead of the sites, what did he mean? I'm just truly a little lost because he goes five years higher than the probation recommended, five years higher than the government. And then later in the statement of reasons, he says he's doing a cross-reference, which is what you've argued in your brief. But I thought that's exactly what he said he was going to moot and not do at the oral sentencing. This is the difference between the attempted first-degree murder cross-reference and what I call the otherwise murder cross-reference. And there was the difference, and he chose the lower guideline range. But where in the oral statement did he choose the otherwise attempted murder? Where does he ever talk about it and calculate it? Well, what the record shows, and may I give you some sites, that the focus all along was on the first-degree murder cross-reference. You'll see that in the motion to withdraw. I really just only want the sentencing hearing. I know. I don't want the motions, and I don't want the statement. I don't think you'll find, because I think what he did was he said, essentially, this is too difficult, and I'm going to moot it. I don't want to do it. I'm going to craft something else. If I'm wrong about that, where did he do it? He rejected the first-degree murder cross-reference, and there's some confusion there. But when taken in context with the prior filings, what I'm saying is. . . Stay in front of the microphone. Stay in front of the microphone. I think I understand what you're saying. On page 230, you'll see that all of his reasons for not having to address that calculation is because she repeatedly says first-degree. Okay. You've been asked three times to stand in front of the microphone. Oh, I'm sorry, Your Honor. The audio in this room is not real good. I think I understand what you're saying. He misunderstood. He's saying I want to moot the first-degree murder, and then by context we have to infer that he went to the second degree. Well, not only context, Your Honor, but he chose a different, lower guideline range that did not rely on the first-degree murder. It relied on the attempted other murder. But we only know that from the statement of reasons. We know that from the statement of reasons, and I can tell you one other place we know it from. He specifically cited the factual basis at page 230. The factual basis more than establishes attempted, well, first-degree or otherwise, but all we need is the otherwise murder here. And that factual basis shows that not only were Santiago and the others, not only did they participate in the shooting, and you'll see that at 88, 92, and 94, all seven, but prior to that, the reason they had all the guns was to protect the drugs and drug proceeds, and that's exactly what they did when they became threatened, is they shot at all the comers, and that's attempted murder one way or another, and the district court specifically referenced it. My concern, though, is— I'm sorry, am I answering the question? Well, yes, I think what you're saying, and I just want to test that, because you're saying that Judge Guidry ended up giving the 30-year sentence based on conduct that was not charged and not pled to. It's attempted murder, which we have to infer from the factual basis. So is that right? I mean, in other words, he's not getting a 30-year sentence on marijuana trafficking. He's getting it because of attempted murder. Which on the count one, it was a firearms conspiracy. No, I know. Drug two, further drug trafficking, and the way they did that was by attempted murder, which you can see in the factual basis. Did he say that perfectly in the sentencing? No. Are there inferences necessary? Yes. And then he gave a non-guideline sentence. But again, under Rule 32, it's got to be the disputed portions. Now, getting back to— Clearly he's disputing that he should get a sentence for uncharged, unpled conduct. That's why he wanted to withdraw his guilty plea. He wanted to withdraw his guilty plea because he disagreed, and he says this several times, with attempted first-degree murder cross-references, 121, 125, 165, and then his guideline objections at 294. So you're inferring that he didn't disagree with the conclusion that he did commit attempted murder, second degree? Right. He references the factual basis with all the facts necessary. They're all there. Now, as to your question about acquitted conduct, well, not acquitted conduct, but conduct not admitted in the factual basis, which is that's—the guidelines consider relevant conduct. The guidelines even consider, although it's more controversial these days, acquitted conduct. But all the cases that when a court sentences on something the person wasn't even charged for, I think I'm right that they actually then take evidence. The government gets the benefit of the lower standard of proof, but someone takes evidence. I think their overarching point here is Judge Guidry didn't test the Rule 11 very seriously. He got an in globo factual basis. He never individualized, but that's a plain-error standard review. But then we get to sentencing, and it was objected to, and the objection again is Judge Guidry just had to do more. He had to say, okay, this case is all about attempted murder, and here's why I think by preponderance you did it. But you're right, he doesn't do that. He just says— Well, I'm not disagreeing that he could have said more. I think that this is one of those spectrum and line-drawing cases where you've got the best practices on planet Earth over here, and you've got over here, you've got way insufficient, and my position is it's somewhere maybe closer to the line, but it doesn't cross the line, that the findings here were sufficient even though you have to look in a couple of places to find them. What's your best case for a district court sentencing someone? This is a first offender, correct, and he gets 30 years, and it's more than the government asked for. What's your best case where uncharged conduct becomes the basis for a sentence? It wasn't even charged. The place that I disagree, Your Honor, is in the charge of firearm conspiracy to furtherance drug trafficking, which they did by protecting their drugs and drug proceeds by shooting at the threats to their drugs and drug— I think that that is the center of the conspiracy that was charged. That's what they were talking about with the drugs. Was it relevant conduct? Relevant conduct, yes. Would it come in at trial? Yeah, it would come in at trial. Yes, and so you have to look several places here. Perfect world, it's all right there listed, but it's there when you look at the factual basis, and the district court considered Santiago's objection, and he said this at page 230, at sentencing. The response of the government probation, the factual basis, the party's arguments, he heard mitigation by the defense, and the mitigations, including that he had no criminal history and violence, came looking for him, requests for a downward variance, government's argument, and then adopted the PSR other than the attempted murder, and so he had— But you are the government. The government's very confident you're representing that what this sentence was was a cross-reference, as he states in the Statement of Reasons, correct? It was a cross-reference to determine the guideline range, but then the court said, but I'm giving a non-variant sentence, and here's what it is, and gave— Within the range that includes the second-degree attempted murder, correct? Yes. Or did he go up from that even? No, he— No, he didn't. So the answer to my question is, but say no if you think no. The government is saying what Judge Guidry did here was a sentence corresponding to the guidelines based on relevant conduct. It's a cross-reference sentence, yes? Yes. Okay. But therefore, you're not defending it as a straight 3553 sentence. I'm—I don't think it's improbable that you can't have both. He says here's the guidelines. Did you argue in the brief that it's both? Did you argue this is a valid 3553 sentence, regardless of guideline error? I argued that—I argued all of the reasons for the variance, and as you've mentioned, there were a lot of them. As far as making this—I don't remember, and so maybe I didn't—make the specific argument that he can go up on a non-guideline sentence without regard to the guidelines. You know, I mean, he can—on a 3553—I mean, Melinda Martinez says, you know, show what the guidelines are. But then he's free to disregard the guidelines and issue a non-guideline sentence. And if I did not make that clear in the brief, and I'm not making it clear now, I apologize. Did I answer your question, Your Honor? Yes. Okay. So I think it's just basic guideline law and non-guideline law that a district court can vary upwards with a non-guideline sentence, and that's why they call it that. And so I think that's what—I think that that's part of the equation here. I would make that an alternative argument, but I don't—I still think that it was sufficient when you put the parts together. Do you want to get to the Rule 11 issues? Oh, on the Rule 11, the sufficiency of the factual basis comes down to one thing. In the motion to withdraw, the whole complaint is about attempted murder. He never says—he never contests the specific—the specific admissions he made in the factual basis. This was a guidelines question that he was contesting in his motion to withdraw. You're reviewing for plain error. You review for plain error. Well, the focus now, I'm hearing from the defense counsel, is not that there's a Rule 11 defect on lack of proof of Santiago discharging the gun. It's lack of proof of his scienter. Do you want to respond to that? Yes. He admitted that he was in the hotel rooms to store, prepare, and distribute drugs. They had numerous guns to protect the drugs and drug proceeds from rivals in law enforcement. And then, when the time came to protect those drugs and drug proceeds, they did that. They did—the reason why they had the guns, which he admits, in the room, was to protect drug and drug proceeds. And when they were threatened on December 28, 2020, they did, with the intent that is set out in the factual basis, they protected those drugs and drug proceeds. And that is what negates a self-defense claim because— Well, we're not worried about self-defense for the guilty plea, are we? There's no issue of that. Well, there's an issue of it at sentencing. No, but we're not—I'm going to ask you just about the guilty plea. Oh, okay. A clean error. Did district judge commit clear and obvious error when it accepted counts two and four's pleas because the factual basis misses an element of either? You would say no, right? I was about to interrupt you, Your Honor. I'm sorry. It says what they were going to do, they were going to protect the drugs and drug proceeds, what they had, numerous weapons. When the time came, they used them to protect the drugs and drug proceeds and also themselves. And in the Cooper case, the court has looked at what does in furtherance mean. In furtherance means, in terms of using the firearms in furtherance of the drug conspiracy, you look at the type of drug conspiracy here, the type of drug sales, what happened, the accessibility of the guns, the weapon type as— All the elements you touched on. What about the little bit of confusion in our law about the statutory language allows temporary use, but the Fifth Circuit case law seems to say it can't just be temporary. It's got to be a longer maintenance. Do you have a hotel case? Because clearly they used the guns. I looked at hotel cases, Your Honor. And maybe it's just my research inability, but I did not find temporary and hotel. However, there's a reason why temporary is in there, and I don't see how, when Congress used temporary, it wasn't— There was no exclusion for hotels from temporary. Temporary seems a very definition of using and maintaining two hotel rooms. And I have some facts specific to Santiago as to his role in the Stash House statute. You can see the more general allegations that they were all using it to store drugs and drug proceeds in the weapons. But there's more to what Santiago did. The PSR found that Santiago and his co-defendants booked the rooms, rooms 1514 and 1509, to distribute legal drugs, store drug proceeds, and firearms. And that is at page 277, adopted by the District Court at 231. They had large quantities there. And it was for retail sale plus storage. Asked if Santiago, in addition to admitting that he was protecting the sites with the guns and that Santiago and others immediately fired guns to protect the drugs and drug proceeds. If you look at the video at 1.14 to 1.16, it shows Santiago taking extra steps to move the contraband, the guns, from 1514, where obviously the police are going to look because that's where the shootout happened, to a room down the hall that they had for storage, 1509. And he makes three trips to do that. The first trip, he has a rifle, and he appears to open the door with a key. That's an inference. You have to look at it, and you may not agree with me. But he's leading a couple of the guys down the hallway to the other room. He's trying to get in. It looks like with a key. A key shows access. Oh, Your Honor, I'm sorry. But looking at that, you'll see three trips, and the latter two are by him, and he was the last man to leave after he was cleaning up his house. So thank you, Your Honors. I'm sorry to have gone over. I lose track of time. Thank you, Ms. Copes. Ms. Coon for rebuttal. Thank you, Your Honors. For your Rule 11 arguments, they are allowed to look at the PSR in the video, correct, or we would be. If we see evidence of intent there on the video, unlocking a door, running with a rifle, we can do that. I agree, Your Honor. For plenary review of the sufficiency, the court, even though that wasn't before the court for the plea, the court can look at other record evidence. This court's case law, though, I would say that still doesn't meet the standard. The court has said there has to be evidence of sufficient dominion and control, and the court has laid out the case-specific inquiry that applies. And from my understanding, the government's argument was that this was just use in the briefing. I believe their argument was just it satisfied. This is shifting off intent. Now we're back just on did he use the gun, and that is the carry, the use element. Oh, I apologize. I thought you were talking about maintenance. Oh. I thought you were talking about the other conviction. Okay, well, that one's fine, too, because time's quick. What's your argument? The statute says temporary use counts. There's no circuit that says overnight hotel stash house doesn't count. Why would we reverse? So there's no evidence that Mr. Santiago personally maintained this. And in the court's case law in Barnes, the court makes clear that there has to be sufficient dominion and control. It's not just the fact that somebody used something or was present. But if he rented it, if he made the hotel. There's no evidence. There's no admissions about him renting the hotel. I thought the PSR was just read to us. I was trying to look back at it. I haven't checked that paragraph. All right. You go ahead. Your time's limited. Thank you, Your Honor. So just briefly, I just want to flag a few cases for regarding the non-calculation of the guidelines and the questions about whether the court can just say, based on 3553A, I'm going to give a sentence regardless. Rosales-Morales says a district court has to first determine what the range is. Pugh says that when the court's contemplating a non-guideline sentence, it has to consider the extent of the deviation. This court's rulings in Smith, 1998, and Smith, 2006, both show that even if the court's considering a non-guideline sentence, it has to look first at the guidelines and decide whether the extent is justified. If you win on the sentencing, again, am I right, it's pretty much just the consecutive mandatory, right? Because you aren't challenging the sentence on counts one and three. Four is duplicative of one. Sorry. The sentences are being challenged across the board. It's the two convictions for Rule 11 that we've challenged. Okay. The sentencing proceeding stands on its own. That's the entirety of the sentencing proceeding. Okay. Also, I do believe, and just to correct something, and I could be wrong, but I believe when the government said that Judge Guidry said at the sentencing that he considered the party's arguments, I did not find that anywhere in the sentencing hearing. Looking at ROA 229 to 230, all he says is, I reviewed, when he's talking about the objection, I reviewed both the response of probation officer and that of the government. Then he explains he's not making a finding, and then later he just talks about how horrific this is. Did he never say, oh, I accept the PSR, including its guideline calculations? He says except for the objection, as I've explained, that I'm not addressing or something to that effect. He basically says I've adopted the PSR except with respect to this issue. So you'd say at that point we're left with just no clarity as to the guidelines. Right. And I think that makes clear that he is carving that out as something he's just not touching as far as what the objection is. And yet in the written statement, he is premising it. In the written statement. And I believe it looks like Judge Guidry seems to think that the alternative range put in the addendum by the PSR, that that somehow moots the issue because he says that at one point in the sentencing. But this Court was clear in Neal that the defense doesn't have an obligation to correct a misunderstanding, and the objection was very clear. It applied to any attempted murder allegation. And so that, if that's the error here that he thought he was accepting it, then that's still a procedural error. That's still a problem that needs to be vacated. And I see that my time has expired. If the Court has any other questions. Yes, your case is under submission, Ms. Kuhn. Thank you. Thank you, Your Honors. We'll hear United States v. San Diego.